UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM PLEGUE, II,

|  |  |
|---|---|
| Plaintiff, | No. 04-CV-74348-DT |
| vs. | Hon. Gerald E. Rosen |

CLEAR CHANNEL BROADCASTING,
INC.,

Defendant.
_____/

OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____November 22, 2005_____

PRESENT:   Honorable Gerald E. Rosen
                      United States District Judge

## I.  INTRODUCTION

This Elliott-Larsen age discrimination action is presently before the Court on

Defendant Clear Channel Broadcasting, Inc.'s Motion for Summary Judgment.  Plaintiff

William Plegue, II has responded to Defendant's Motion and Defendant has replied.

Having reviewed and considered the parties' briefs and supporting evidence, and having

heard the oral arguments of counsel on November 17, 2005, the Court is now prepared to

rule on this matter.  This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

1

Plaintiff William Plegue, II is an experienced radio producer.  Plegue, who is 48 years old,  has worked in the radio industry for nearly 20 years, 18 of which as a producer of radio shows in the Detroit market.  During the course of his career, Plegue produced a number of major Detroit area news-talk shows including the J.P. McCarthy show on WJR, the Denny McLain, Mark Scott, Geoffrey Feiger, and Jimmy Barrett shows on WXYT, and the Young Country "Moo Crew" and Dr. Don shows on WYCD. [*See* Plegue's Resume, Plaintiff's Ex. 2.] Significant portions of both the J.P. McCarthy show and the Denny McLain show were devoted to sports. [*See* Plegue Dep., pp. 19-20.]

In August 2003, Plegue applied for a position as producer of WDFN's "Jamie & Brady" Morning Show.  The "Jamie & Brady" Morning Show has a sports-talk format.[1]

---

[1]  According to the WDFN Morning Show Producer Job Description, the essential duties of the position are as follows:

Secure great interviews including but not limited to everything and anything related to sports - especially breaking sports news, pop culture, and any subject that would relate to WDFN's target audience.

Track breaking sports news and coordinate breaking news information with morning show hosts and update reporters.

Create funny bits and parodies related to sports, pop culture, and anything else that WDFN's target male audience would find entertaining.

Research show content through the daily combing of newspapers, then internet and any other related sources.

Assist the hosts daily with topic development and show formatting.

Must create daily show promos using digital editing software.

Rona Danziger, WDFN's Program Director, was the individual responsible for selecting the Morning Show producer.  Danziger became Program Director in the fall of 2002.  At her deposition, Danziger admitted that all of the on-the-air and production employees that she has hired or promoted since becoming WDFN's Program Director are in their mid-20's to mid-30's.  *See* Danziger Dep., pp. 25-44.

With respect to the Morning Show producer position at issue in this case, Danziger testified that after reviewing the applicants' resumes, she selected eight individuals to interview.  Plaintiff was among the applicants interviewed.  According to Danziger, her interview of Plegue lasted approximately 20 minutes.  Danziger testified that although she was impressed with Plegue's resume and extensive radio background, and was certain that he could handle the technical aspects of the job, Plegue did not

_____

Gather sound bites and audio from sporting events, practices and news conferences as needed by WDFN's sports director.

Ensure logged commercials, promotions, sweepers and any other programming element essential to the station are aired.

Operate on-air control console during live programming or satellite-fed syndicated programming.

Follow and enforce FCC regulations and station and company policies.

Answer phone lines and screen phone calls for broadcast.

Operate the Prophet computer system, call screening computer system and all other broadcast equipment.

Coordinate WDFN's programming internship program and be responsible for maintaining a regular flow of interns.

3

perform well during his interview.  According to Danziger, during his interview, Plaintiff

was unable to describe how he would create topics which would entertain and relate to

the target demographic group;[2] failed to display an interest in pop culture, or an ability to

take sports topics and spin them into interesting topics or parodies; failed to display an

ability to meld pop culture with sports; and displayed no apparent familiarity with

WDFN's morning show personalities.  *See* Danziger Dep., pp. 92-95; 132-142; 248.

        Danziger testified that she posed several "what if" questions to Plaintiff and found

his responses unsatisfactory.  However, the only specific question that Danziger could

recall asking was that she asked Plegue what if the Tigers continued to lose every game

and there was no real outstanding headline, how would he spin something about the

Tigers in an interesting way to make the Tigers a topic for the morning show.  Danziger

Dep. p. 91.  Danziger said that Plegue responded, "That's a good question, I have no

idea," or "I don't know."  *Id.*[3]

        According to Plaintiff, during the course of the interview, Danziger asked him,

_____

        [2]  Danziger testified that the station targets males in the 25 to 44 age group and
that the "desirable" listeners are between ages 30 and 40.  *See* Danziger Dep. pp. 123-24.

        [3]  Plegue disputes that he said "I have no idea" or "I don't know" in response to
this question about spinning a Tiger loss.  He testified that he responded by stating that
he would call ESPN commentators to see if there were any trade rumors, call Minor
Leagues to find out what superstitions they have about breaking losing streaks, or call
Tiger wives to find out how they were reacting to the losing streak.  *See* Plegue Affidavit
¶ 2.  Plegue further testified about his responses to a number of other "what if" questions
posed by Ms. Danziger, including what he would do for a topic concerning a Michigan-
Michigan State game and what he would do for Tiger spring training.  *See* Plaintiff's
Dep., pp. 33-35.

"Do you think you would have problems working with younger hosts?" and "[i]f you were to get this job, you'd be working with two younger hosts.  Would the age difference be a problem?"  *See* Plegue Dep., p. 47.  In her April 5, 2005 deposition, Danziger did not recall asking Plegue whether the ages of the Morning Show hosts [31 and 32 years old] would be of concern to him, *see* Danziger Dep., pp. 100-101, although Clear Channel admitted that the question was asked in its response to the Michigan Department of Civil Rights in connection with Plegue's charge of discrimination.  *See* Plaintiff's Ex. 1.  According to Danziger, age only came up when she told Plegue the ages of the show's hosts "as background" and how they are able to use "a lot of the things that today's demographic [relates to]" in their show.  *See* Danziger Dep., pp. 93-95.  In Danziger's words, "[t]he whole interview was about finding out if a candidate can relate to the target age of the demographic."  *Id.* at 100.

Plegue testified that when Danziger asked him if he thought he would have a problem working with younger hosts, "[i]t hit me like a lightning bolt. . . .  It hit me like taking an in-betweener. . . below the belt."  Plegue Dep. p. 47.  Plegue said he responded, "Excuse me? . . .  For my entire career I've worked with older people.  I have never considered age to be a factor in doing my job. . . ."  *Id.*

Plegue did not get the job.  Instead, Danziger hired Jonathan Klimczuk, who was, at the time, 24 years old.  Klimczuk had done a 20-hour-per-week summer internship at WDFN the previous year (2002) while working on his undergraduate degree at

5

University of Michigan - Dearborn and then, after his internship ended, he stayed on as a part-time producer working approximately 20 hours per week at the station from August 2002 until he graduated in May of 2003.[4]  When the former Morning Show producer, Glen LaGrou announced that he was leaving the show in June 2003, Klimczuk filled in as producer of the Morning Show for the month of July.  The work Klimczuk did at WDFN as an intern, as a part-time producer and as a one-month substitute producer of the Morning Show was Klimczuk's only radio experience prior to being hired as the permanent Morning Show producer in October 2003.

Danziger testified that she did not interview Klimczuk the same way that she interviewed Mr. Plegue because she "kind of knew what he was doing" with the various WDFN shows he had worked on and produced in a fill-in capacity.[5]  Danziger Dep., p. 181.  Therefore, she did not ask him, as she did with Plegue, what his outside interests were, what music he listened to or what TV shows or movies he had seen recently.  *Id.* at 180-181.  Nor did she ask him how he would spin a Tiger loss or any other specific sports-related questions.  She decided it was not necessary to ask Klimczuk the same

---

[4]  Greg Brady, co-host of the Morning Show, testified that of Klimczuk's time as an intern and part-time producer, Klimczuk filled in as Morning Show producer on a total of only 15 shows.  *See* Brady Dep., p. 45.

[5]  In August and September 2003, the show was produced by another applicant, Doug Todd.  Todd also was at the time a part-time producer at WDFN.  Danziger and the Morning Show's co-hosts, Jamie Samuelson and Greg Brady testified that Klimczuk and Todd were asked to produce the Morning Show in July, August and September as an "audition."  No other applicant was offered an opportunity to audition.

questions she asked Plegue because "I know what he watches based on some of the ideas he comes up with . . . and [I know] that he was constantly coming up with ideas and thoughts and things related to both pop culture. . . and sports.  So I know in a general sense."  *Id.*

After being notified by Danziger that he was not selected for the Morning Show producer position, in December 2003, Plegue contacted the Michigan Department of Civil Rights (the "MDCR") and lodged a claim of unlawful age discrimination against WDFN.  Specifically, Plegue complained:

> I am 46 years old and I believe I have been subjected to unequal terms and conditions of employment and denied hire based on my age.
>
> I interviewed for the position of morning show producer on August 27, 2003.  During the interview, I was asked if my age would be a problem because if hired, I would be working with two younger men in their 30's. My response was I have worked in radio for more than twenty years with a myriad of people of all ages and my age has never been a problem.  On October 29, 2003, I received a letter from the respondent which stated their strong feelings to have someone who was familiar with the show and with a lot of experience producing sports talk radio.  It was brought to my attention that the person hired is around 30 years old and has considerably less experience than myself.

*See* Defendant's Ex. G.

The MDCR requested Defendant to respond.  Charlene Little, Clear Channel's Human Resources Director, responded on behalf of Defendant:

> Our position is that NO UNLAWFUL DISCRIMINATION has taken place in fulfilling [sic] the position of Morning Show Producer for one of our radio properties WDFN.

> Mr. William Plegue did apply and interview for the position.  However, it was filled by an internal promotion from within.  As a general practice, our company does encourage our management to train, strengthen and encourage our employees to be able to fill our vacancies from within whenever possible.[6]  Mr. John Klimczuk, the hiree, has been a regular fill-in in that position since August 2002 and successfully filled the position full-time during the interviewing process.  Thereby, he is very familiar with this 'sports intensive' position.  You will note on Mr. Plegues' [sic] resume (attached), that there is no evidence of producing a sports related program.
>
> After speaking with Ms. Danziger regarding the conversation where 'age' was introduced, it was a little different than Mr. Plegue explained.  She did not ask him if "his" age would be a problem, she asked whether his potential co-workers [sic] 'age' and the general WDFN audience 'age' would be of any concerns to him.  This question was based on the fact that radio is a very demographically niched industry and we do have to base some of our hiring decisions on an applicants' familiarity with the listening audience in certain positions that have close contact with that population.  But again, she did not ask him how old he was and did not indicate or have any problem with his age.  The hiring decision was based solely on the experience and the familiarity with the show that Mr. Klimczuk possessed.

*See* Plaintiff's Ex. 1 [emphasis added.].

Based upon Clear Channel's response, the MDCR notified the parties on April 12, 2004 that "no formal complaint will be taken at this time."  *See* Defendant's Ex. K.  On November 8, 2004, Plaintiff filed this diversity action alleging one count of age discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.  Discovery has closed and Defendant now has moved for summary judgment.

---

[6]  Despite what she wrote in her response to the MDCR, Charlene Little testified in her deposition that there was no "company policy" about filling vacancies from within and she did not know even know whether hiring from within was the "general practice" of the company.  She could only testify that "[w]e feel good about when our managers move up or our employees move up. . . .  It's exciting for the staff, it's exciting for management and we do it quite a bit."  *See* Little Dep. pp. 35-36.

III.  DISCUSSION

A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion.  These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[7]  According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment.  They are summarized as

---

[7]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."  10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

9

follows:

> \* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

> \* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

> \* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> \* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent  must "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996).  *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  The Court will apply these standards in deciding Defendant's Motion for Summary Judgment in this case.

10

B.    <u>PLAINTIFF HAS MADE OUT A CLAIM OF AGE DISCRIMINATION</u>

As indicated, Plaintiff has alleged a claim of age discrimination under the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2202 *et seq.*[8]  An employment discrimination plaintiff can establish his claim of unlawful discrimination under Michigan's Elliott-Larsen Civil Rights Act either (1) by producing direct evidence of discrimination or (2) by presenting a *prima facie* case of discrimination in accordance with the *McDonnell Douglas/Burdine*[9] framework established by the United States Supreme Court for use in Title VII cases.  *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462-63, 628 N.W.2d 515, 520-21 (2001); *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 694-95, 568 N.W.2d 64, 67-68 (1997); *Harrison v. Olde Financial Corp.*, 225 Mich. App. 601, 572 N.W.2d 679 (1998).  Plaintiff here contends that he can make out his claim of discrimination under both theories.

---

[8]  The Elliott-Larsen Act provides, in pertinent part:

(1)  An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of religion, race, color, national origin, age, sex, height, weight, or marital status.

M.C.L. § 37.2202(1)(a).

[9]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 148 (1981).

1.      <u>Direct Evidence of Discrimination</u>

"Direct evidence" of discrimination is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Sniecinski v. Blue Cross and Blue Shield,* 469 Mich. 124, 133, 666 N.W.2d 186, 192 (2003): *Hazle v. Ford Motor Co., supra*, 464 Mich. at 462, 638 N.W.2d at 520; *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (applying Michigan law).  In a non-reduction-in-force age discrimination case, such as the instant action, the plaintiff need not establish that his age was the exclusive cause of the adverse employment or even that it was a "determining" factor, rather the plaintiff need only establish that it was one of the reasons "which made a difference." *See Reisman v. Regents of Wayne State Univ.*, 188 Mich. App. 526, 539, 470 N.W.2d 678 (1991); *see also Donnelly v. Department of Corrections*, 2001 WL 693933 at * 1 (Mich. App. 2001).

"Direct evidence" of age discrimination, however, is evidence that "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."  *Johnson v. Kroger Company*, 319 F.3d 858, 865 (6th Cir. 2003); *Norbuta v. Loctite Corp*., 1 Fed. Appx. 305, 313 (6th Cir.2001) ("Whatever the strength of [the] evidence, it is not 'direct' evidence [if] it admits more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact."); *see also Mohr v. Challenge Machinery Co*. 1997 WL 33349395, *1

12

(Mich.App. 1997) ("Direct evidence of disparate treatment would be evidence that, if believed, would prove the existence of the employer's illegal motive without benefit of presumption or inference.")

When a plaintiff can cite direct evidence of discrimination, the *McDonnell Douglas/Burdine* shifting burdens of proof are not applicable. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613 (1985); *DeBrow v. Century 21 Great Lakes, Inc*., 463 Mich. 534, 539, 620 N.W.2d 836, 838 (2001). Thus, once a plaintiff presents evidence of his qualification or eligibility and direct proof that discriminatory animus was causally related to the adverse employment action, an employer may not avoid trial by merely articulating a nondiscriminatory reason for the decision. *Harrison*, *supra*, 225 Mich. App. at 613. Rather, "under such circumstances, the case ordinarily must be submitted to the factfinder for a determination whether the plaintiff's claims are true." *Id. See also, United States ex rel. Diop v. Wayne County Community College Dist.*, 242 F. Supp. 2d 497, 508 (E.D. Mich. 2003) ("The presentation of direct evidence is generally sufficient to submit the plaintiff's case to the jury.") In other words, direct proof of discriminatory animus will ordinarily preclude a grant of summary judgment. *Lamoria v. Health Care & Retirement Corp,* 230 Mich. App. 801, 807, 584 N.W. 2d 589 (1998), *vacated and reinstated by conflict panel*, 233 Mich. App 560; 593 N.W.2d 699 (1999). As the Michigan Supreme Court explained in reversing the trial court's grant of summary disposition in *DeBrow v. Century 21, supra*:

> Plaintiff testified in his deposition that when he was being removed

13

as president, his superior, Century 21's Great Lakes Executive Vice President, Robert Hutchinson, told plaintiff "you're too old for this shit." This statement is direct evidence of age animus. Moreover, because it was allegedly made in the context of the discussion in which plaintiff was informed that he was being removed as president, it bears directly on the intent with which his employer acted in choosing to demote him.

. . . Neither this court nor the trial court can make factual findings or weigh credibility in deciding a motion for summary disposition. This evidence cannot be ignored [as unworthy of credence] in the context of a motion for summary judgment and precludes. . . dismissal of the plaintiff's age claim. Clearly, the statement by Vice President Hutchinson, if believed by the trier of fact, suggest that plaintiff's age was *a factor* in the mind of his employer at the point plaintiff was removed from his position.

The plaintiff's former employer argues that the disputed statement was a "stray remark[]" that cannot give rise to liability. In the circumstances of the present case, however, that is an argument for the finder of fact to consider.

463 Mich. at 540, 620 N.W.2d at 839 (citations omitted).[10]

_____

[10] In his separate concurring opinion in *DeBrow*, Justice Markman addressed the argument that the statement was ambiguous because it was subject to two alternative interpretations, but nonetheless found that this, too, was a matter for the jury to decide:

There are at least two conceivable interpretations of this comment (1) that it constitutes what the majority describes as "direct evidence" of age animus in the context of an adverse employment decision taken by defendant or (2) that it represents a colloquial expression which does not necessarily communicate the speaker's perspective that the object of his remark is literally to aged to perform a particular task, but rather empathizes with the other person by indicating that, on the basis of his experience, education, or level of achievement, he should not have to tolerate certain difficult circumstances in which he has become enmeshed.

I concur in the result reached by the majority because I agree that it is ultimately for the factfinder to determine which of these alternative interpretations best describes Hutchinson's remarks, *to wit,* whether these remarks are better understood in their literal or in their colloquial senses.

14

As indicated above, direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a factor that motivated the defendant. Direct proof of discriminatory animus, thus, includes such things as racial slurs and comments about a person's age or gender made by decision makers. *Lamoria v. Health Care & Retirement Corp.*, *supra* 230 Mich. App. at 807-811.  However, statements by decision makers that are unrelated to the employment decision at issue do not constitute direct evidence that unlawful discrimination was a determining factor in the employer's decision. *Harrison, supra*, 225 Mich. App. at 608 n.7; *Wells v. New Cherokee Corp*, 58 F3d 233, 237-238 (6th Cir. 1995); *Milner v. DTE Energy Co., supra*, 285 F. Supp. 2d at 966; *Hatmaker v. Xerox*, 1998 WL 1991212, *3 (Mich. .App. 1998).  Rather, to qualify as direct evidence of discrimination, such remarks must relate to the employment decision at issue.  *Milner, supra*; *Graham v. Ford*, 237 Mich. App. 670, 677, 604 N.W.2d 713 (1999); *Hatmaker, supra*.  Comments that are isolated, too ambiguous, or remote in time in relation to the employment decision at issue generally have been held not to constitute direct evidence.  *Milner, supra; Foster v. Tweddle Litho Co*.  2002 WL 207575, *1 (Mich. App. 2002), citing *Krohn v. Sedgwick James of Michigan, Inc.*, 244 Mich. App. 289, 297-300; 624 N.W.2d 212 (2001).

In this case, Plaintiff points to two statements made by Rona Danziger during his employment interview:  "Do you think you would have problems working with younger

---

463 Mich. at 541-42, 620 N.W.2d at 839-40.

hosts?" and "If you were to get this job, you'd be working with two younger hosts. Would the age difference be a problem?" *See* Plegue Dep., p. 47. Defendant argues that these statements do not constitute direct evidence of age animus because (1) they were "only two questions out of several posed to Plaintiff during his twenty to thirty minute interview," and hence, should be viewed as "isolated" comments, and (2) are "ambiguous at best, subject to a myriad of interpretations." *See* Defendant's Brief, p. 10. Defendant further argues that the statements do not constitute direct evidence of discrimination because Ms. Danziger denies ever asking those questions and she only mentioned age when discussing the Morning Show's target demographic group.

First of all, Defendant's denial of having made the statements is no basis for finding no direct evidence of discrimination. As Defendant must be aware, Danziger's denial, at best, creates a question of fact as to whether the statement was made; it has no bearing on whether the statements themselves, if made, constitute evidence of age discrimination.

Defendant's "isolated remarks" and "multiple interpretations" arguments are similarly unavailing. That Danziger asked other questions during Plaintiff's employment interview does not render the two ageist questions "isolated." Generally, the inquiry into whether a discriminatory comment is an "isolated" or "stray" remark is directed at remarks that are either made by a person not involved in the challenged employment decision or are temporally removed from the employment decision. *See e.g., Krohn v*

16

*Sedgwick James of Michigan, supra* (remark made by a managerial employee of defendant, "out with the old and in with the new" found to be an isolated and stray remark not attributable to the defendant- employer where the manager was not involved in decision to terminate plaintiff's employment and remark was made two years prior to plaintiff's termination). By contrast, a *single* remark from a supervisor made while engaged in the challenged employment decision -- even if the statement might be subject to multiple interpretations -- is sufficient to constitute direct evidence, and the remark's weight and believability are strictly matters for the finder of fact. *See DeBrow v Century 21 Great Lakes, Inc*, *supra* 463 Mich. at 538-541, and Justice Markman's concurring opinion, 463 Mich. at 541-42, 620 N.W.2d at 839-40, discussed above in footnote 10.

Defendant's argument that Danziger's comments about age should be disregarded because they were only made when discussing the show's "target demographic" age group is likewise unavailing. The Seventh Circuit rejected a similar argument in *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446 (7th Cir. 1992).[11] In *Century Broadcasting*, the court found the radio station managers' statements that the station was "looking for a new young sound," wanted "to attract a younger audience," and that the potential for growth within the target demographic group "c[ould] be achieved by giving

_____

[11]   In examining Elliott-Larsen Act claims, Michigan courts frequently looked to federal decisions construing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-(e). *Jager v. Nationwide Truck Brokers, Inc.*, 252 Mich. App. 464, 485, 652 N.W.2d 503, 515 (2002); *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 894 (6th Cir. 1997) (applying Michigan law).

the station a younger feel," though subject to an innocent interpretation, could support the age discrimination claim of fired radio announcers who were all over forty years of age. *Id.* at 1457. *See also, Rengers v. WCLR Radio Station*, 825 F.2d 160, 164 (7th Cir. 1987) (evidence that station management wanted to have a youthful image to draw a younger audience to bolster sagging ratings held sufficient to support discharged radio announcer's claim of age discrimination), *vacated on other grounds*, 486 U.S. 1020 (1988), *and overruled on other grounds, Coston v. Pitt Theatres, Inc.*, 860 F.2d 834, 836 (7th Cir. 1988).

Although the Court finds little merit in the arguments proffered by Defendant, it nonetheless finds that the two questions relied upon by Plaintiff -- "Do you think you would have problems working with younger hosts?" and "If you were to get this job, you'd be working with two younger hosts.  Would the age difference be a problem?" -- do not themselves constitute "direct" evidence of age discrimination because they do not necessarily "*require* the conclusion" that Plaintiff's age was a motivating factor in Defendant's decision not to hire him. *See Harrison, supra* at 610. The statements instead require an *inference* to reach that conclusion. *See Newberry v. General Motors*, 1998 WL 1988953 (Mich.App. 1998) (holding that plaintiff's proffered evidence -- the personnel director's statement that plaintiff was a "difficult" employee who "used his race to intimidate people" -- did not constitute direct evidence of discrimination because they required an inference to conclude that his race was a motivating factor in the decision to

18

terminate his employment).  *See also, Johnson v. Kroger Co*, *supra* ("[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.") *Compare*, *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000) (noting that "a facially discriminatory employment policy or a corporate decision maker's *express statement* of a desire to remove employees in the protected group is direct evidence of discriminatory intent." (Emphasis added).)

Here, given the station's target demographic, the factfinder would have to infer that Ms. Danziger's questions as to whether Plaintiff would have a problem working with two younger program hosts are indicative of a stigmatized attitude toward older workers. The trier of fact would then have to infer from this statement and other evidence in the record, that Danziger was motivated by this age-based animus in deciding to hire John Klimczuk instead of Plaintiff for the Morning Show producer position.  Only through these inferences, and not on the basis of Danziger's remarks alone, could one reach the requisite conclusion that age was a motivating factor in Danziger's decision.  For this reason, the Court finds that Plaintiff cannot make out a *prima facie* claim of age discrimination under a "direct evidence" theory.

2.    Plaintiff's Claim of Discrimination Under the *McDonnell Douglas/Burdine Framework*

Where the plaintiff has no direct evidence of impermissible bias, in order to avoid

19

summary judgment, he must proceed through the steps set forth in *McDonnell Douglas*.
*Hazle, supra*, 464 Mich. at 462, 628 N.W.2d at 520.  The *McDonnell Douglas* approach
allows a plaintiff "to present a rebuttable *prima facie* case on the basis of proofs from
which a factfinder could infer that the plaintiff was the victim of unlawful
discrimination."  *Id.* (quoting *DeBrow v. Century 21 Great Lakes, Inc.*, *supra*, 463 Mich.
at 537-38).

    To establish an Elliott-Larsen discrimination claim using the *McDonnell Douglas*
framework, a plaintiff is required to present evidence that he was (1) a member of a
protected class, (2) he was subject to an adverse employment action, (3) he was qualified
for the position, and (4) others, similarly situated and outside the protected class, were
treated differently.  *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 568 N.W.2d
63 (1997).   If the plaintiff successfully proves a *prima facie* case, the burden of
production shifts to the employer to articulate some legitimate, nondiscriminatory reason
for the employment decision.  *Hazle, supra*; *Lytle v. Malady (On Rehearing)*, 459 Mich.
153, 172-73, 579 N.W.2d 906, 913 (1998);  *McDonnell Douglas*, *supra*; *Burdine*, *supra*.
Once the employer carries this burden, the burden of production shifts back to the
plaintiff to show by a preponderance of the evidence that the legitimate reasons offered
by the employer were not its true reasons, but rather were a pretext for unlawful
discrimination.  *Hazle, supra* at 465-66; *Town, supra*, at 698; *Lytle, supra*, at 175-76.
*Burdine, supra*, 450 U.S. at 253.

Defendant here first argues that Plaintiff has failed to make out a *prima facie* case of age discrimination under the *McDonnell Douglas* construct. Although Defendant acknowledges the four required elements of a *prima facie* case, it does not specify which of the elements are not satisfied in this case. In any event, the Court disagrees with Defendant and concludes that Plaintiff has made out a *prima facie* case.

It can hardly be disputed that Plaintiff has satisfied the first, second and fourth *McDonnell Douglas* elements. "Age" is a protected category under the Elliott-Larsen Act. Plaintiff was subject to an adverse employment action -- he was not hired for the Morning Show producer position -- and that position was given to a substantially younger applicant. Presumably Defendant challenges Plaintiff's satisfaction of the third element, i.e., whether he was qualified for the position. In this regard, Defendant argues that "Ms. Danziger did not consider [Plaintiff] the best candidate for the position." Defendant's Brief, p. 11.

However, the Michigan Supreme Court has expressly rejected the argument that, in a failure to hire case, to satisfy the third element of a *prima facie* case, the plaintiff is required to provide evidence that he or she is at least as qualified as the successful candidate. *See Hazle v. Ford Motor Co.*, *supra*, 464 Mich. at 468-470, 628 N.W.2d at 523-25. The *Hazle* court explained:

> Defendants argue that plaintiff has failed to establish the third and fourth elements of a *McDonnell Douglas* prima facie case. They contend that, even if minimally qualified, plaintiff had "neither supervisory experience nor training or experience in financial accounting matters -- two

21

crucial preferred qualifications of the Office Manager position, and that in any event, she was far less qualified than Michelle Block. In defendants' view, a plaintiff alleging a discriminatory failure to promote or hire can only establish a prima facie case under *McDonnell Douglas* by providing evidence that he is *at least as qualified* as the successful candidate. We disagree.

As an initial matter, nothing in the Supreme Court's decision in *McDonnell Douglas* suggests that a plaintiff is *required* to offer evidence of relative qualifications in order to establish a prima facie case of discrimination. Nor have the Court's subsequent decisions identified such a requirement. In fact, we believe that at least one of the Court's post-*McDonnell Douglas* decisions [*Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363 (1989)] suggests that a plaintiff is *never* required to establish relative qualifications.

\* \* \*

Because a plaintiff has no obligation to prove relative qualifications to a jury, it can hardly be disputed that a plaintiff cannot be *required* to offer evidence that he is at least as qualified as the successful candidate in order to establish a prima facie case under *McDonnell Douglas.* See *Walker v. Morthan*, 158 F.3d 1177, 1192 (C.A. 11, 1998) ("We cannot imagine that the Supreme Court would speak so strongly regarding the lack of any burden to prove lesser qualifications and still leave available to the defendant at summary judgment the argument that plaintiff failed to prove equal qualifications.")

464 Mich. at 468-70, 628 N.W.2d at 523-24 (emphasis in original).

Thus, as the Court stated in *Town v. Michigan Bell Telephone Co.*, being qualified for a job, for purposes of establishing a *prima facie* case of discrimination, requires only "minimal qualification." 455 Mich. at 699. It can hardly be disputed that Plaintiff has met this burden in this case. Indeed, Ms. Danziger admitted as much in her deposition. She testified that she was impressed with Plaintiff's resume and had no doubt that he could handle the technical aspects of the job. Further, Plaintiff testified that significant portions

22

of a number of the news-talk radio shows that he had produced in the past involved sports talk. The fact that Plaintiff has never produced an all-sports show is not itself disqualifying as nowhere in the job description is this a delineated requirement. *See* note 1, *supra.*

Having made out a *prima facie* case, the burden of production shifts to Defendant to articulate a non-discriminatory reason for its decision. Defendant has met this burden. According to Defendant, Plaintiff was not selected for the Morning Show producer position because Ms. Danziger found his responses to questions posed to him during his interview to be unsatisfactory, and she decided instead to hire Jonathan Klimczuk, finding Klimczuk to be "the best candidate for the position."[12] The burden of production, therefore, shifts back to Plaintiff to show by a preponderance of the evidence that the reasons offered by the employer were not its true reasons, but rather were a pretext for unlawful discrimination. *Hazle, supra* at 465-66; *Town, supra*, at 698; *Lytle, supra*, at 175-76. *Burdine, supra*, 450 U.S. at 253.

In *Lytle v. Malady, supra*, The Michigan Supreme Court affirmed its adoption of

---

[12] Although Defendant attempts to bolster its argument that Ms. Danziger determined that Jonathan Klimczuk was the "best" candidate by asserting that both of the Morning Show hosts concurred with Ms. Danziger's assessment, both Jamie Samuelson and Greg Brady testified that they were never informed who any of the candidates for the producer position were other than Klimczuk and Doug Todd (another under-30 WDFN part-time producer). Only Klimczuk and Todd were afforded month-long "auditions" and Samuelson and Brady were only asked which of these two candidates they would prefer to have as their producer. They were never given an opportunity to review the resumes or assess the skills of Plaintiff or of any of the other five interviewees.

23

what it termed the "intermediate" position[13] in determining what is required with regard

to the plaintiff's showing of pretext in order to survive a motion for summary judgment:

> Under this [intermediate] position, disproof of an employer's articulated
> reason for an adverse employment decision defeats summary disposition
> only if such disproof also raises a triable issue that discriminatory animus
> was a motivating factor underlying the employer's adverse action.  In other
> words, plaintiff must not merely raise a triable issue that the employer's
> proffered reason was pretextual, but that it was a pretext for . . .
> discrimination. Therefore, we find that, in the context of summary
> disposition, a plaintiff must prove discrimination with admissible evidence,
> either direct or circumstantial, sufficient to permit a reasonable trier of fact
> to conclude that discrimination was a motivating factor for the adverse
> action taken by the employer toward the plaintiff.

*Lytle*, 579 N.W.2d at 916 (footnotes omitted).[14]

---

[13]  The Michigan Supreme Court adopted the "intermediate position" in *Town,
supra*, and held that this position required that

> when viewed in the light most favorable to the plaintiff, the evidence must
> create a material issue of fact on which reasonable minds could conclude
> that the employer's stated reason is a pretext for discrimination for
> summary judgment to be precluded.  Thus, plaintiff will not always present
> a triable issue of fact merely by rebutting the employer's stated reason(s);
> "put differently, that there may be a triable question of falsity does not
> necessarily mean that there is a triable question of discrimination."
> Furthermore, we note that in accordance with none other federal circuits,
> "evidence sufficient to discredit a defendant's proffered nondiscriminatory
> reasons for its actions, taken together with the plaintiff's prima facie case
> [may be] sufficient support but not require a finding of discrimination."
> "Where. . . direct or circumstantial evidence from which a fact-finder could
> rationally conclude that the employer's stated reason is a pretext for
> discrimination, summary judgment normally should be denied.

455 Mich. at 698, 568 N.W.2d at 69 (citations and footnotes omitted).

[14]  Michigan law differs from federal law in this respect.  Under federal law, there
is no "pretext plus" requirement.  *See Reeves v. Sanderson Plumbing Products, Inc.*,

24

The Court finds that Plaintiff here has met this burden.  Plaintiff has presented

sufficient evidence from which a jury could infer unlawful discrimination.  First, Plaintiff

has presented evidence suggesting that he was rejected in favor of a less qualified

younger applicant.  Defendant's protestations notwithstanding, the evidence shows that

Plaintiff had significantly more experience producing radio shows than Jonathan

Klimczuk, the successful applicant who was substantially younger than Plaintiff.

Klimczuk had only worked 20 hours per week for at WDFN for 16 months.  For four of

these months Klimczuk was an intern who spent a large portion of time observing others

do their jobs.  Although he had produced some Detroit Pistons games, his only real

experience as a radio talk show producer prior to his interview was as a fill-in for the

Morning Show's regular producer for approximately 15 shows and then, on a "try-out"

basis for one month.  By contrast, Plaintiff had nearly 20 years experience as a radio talk

show producer, including substantial experience on at least two shows, the J.P. McCarthy

show and the Denny McLain show, involving sports talk.  Presented with this evidence, a

jury could conclude that Defendant's stated reason for hiring Klimczuk -- that he had

substantially more producing experience than Plaintiff -- was not Defendant's true reason

for hiring him.  *See Hazle v. Ford Motor Co., supra*, 464 Mich. at 471-72, 628 N.W.2d at

525 (plaintiff's evidence that she had a college degree, credits toward a master's degree

in industrial relations, and substantial work experience none of which the non-minority

---

*supra*; *Peters v. Lincoln Elec. Co.*, 285 F.3d 456 (6th Cir. 2002).

25

candidate who was hired had was evidence from which a jury could infer discrimination).

Further, as discussed above, Plaintiff has presented evidence from which a jury could infer that his age was a motivating factor in Defendant's decision not to hire him. The record evidence establishes that during his interview, Ms. Danziger twice specifically asked him whether he would have a problem working with two younger hosts. Ms. Danziger further testified that Plaintiff's interview "was all about finding out if [Plaintiff] can relate to the target age of the demographic." *Id.* at 100. It is undisputed that the Morning Show targets a younger audience. Danziger testified that the station targets the 25 to 44 age group and that the "desirable" listeners are between ages 30 and 40. *See* Danziger Dep. pp. 123-24.[15] Furthermore, Danziger testified that one of her principal reasons for rejecting Plaintiff was that he did not display a familiarity with "pop culture" and she did not believe that he could "relate to" the same kinds of things that 30-year-olds would relate to. *See* Danziger Dep. pp. 94-100.

In addition, there is evidence of record showing that, other than two popular Detroit area newspaper columnists, Terry Foster and Jim Cnockeart, who were called on an "as needed basis" to fill in occasionally on weekends, all of the on-the-air and

---

[15] Although Clear Channel's stated demographic audience for WDFN in general is males ages 25-54, Danziger testified that the station "tends to skew the 25 to 44 age group" and that "many of our listeners are between 30 and 40, and that's pretty desirable for this format." Danziger Dep. pp. 123-24. She further admitted that the 25-44 age group was the target demographic that she talked about to Plaintiff. *Id.* at 124.

production employees hired by Danziger were under the age of 35.[16]

Viewing all of the foregoing evidence and all of the inferences that may be drawn therefrom, as the Court must, in a light most favorable to the Plaintiff, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, *supra* 475 U.S. at 587; *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005), the Court concludes that a reasonable jury could infer from this evidence that Plaintiff's age was a motivating factor in Defendant's decision. As noted above, Plaintiff need not establish that his age was the exclusive reason for the Defendant's decision; he need only establish that his age was one of the reasons "which made a difference." *Reisman v. Regents of Wayne State Univ., supra*. The Court finds that Plaintiff's pretext evidence taken together with the evidence establishing his *prima facie* claim -- if believed -- could lead a reasonable jury to find that his age was one of the reasons which made a difference with respect to Clear Channel's decision not to hire him and to hire, instead, Jonathan Klimczuk for the Morning Show producer position. But at this summary judgment stage of the proceedings, the Court may not make factual findings or weigh the credibility of the evidence. Rather, these are matters for the jury to decide.

<u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is

---

[16] Danziger herself was 33 years old at the time of Plaintiff's interview.

DENIED.

                                      s/Gerald E. Rosen
                                        Gerald E. Rosen
                                        United States District Judge

Dated:  November 22, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 22, 2005, by electronic and/or ordinary mail.

                                        s/LaShawn R. Saulsberry
                                        Case Manager